# EXHIBIT 2

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS

HAMPDEN COURT DEPARTMENT OF THE TRIAL COURT NO. 2679CV---- 170

AMBER RAND,

Plaintiff

v.

INTUITIVE SURGICAL, INC.,

Defendant

03/16/2026

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Parties, Jurisdiction and Venue**

1. Amber Rand ("Ms. Rand") is a woman residing in Hampden County, Massachusetts.
2. Intuitive Surgical, Inc. ("Intuitive" or "the Company") is a publicly listed California corporation registered in Massachusetts with a principal business address of 1020 Kifer Road, Sunnyvale, CA 94086.
3. Massachusetts has jurisdiction over the parties pursuant to M.G.L. c. 223A §§ 2 and 3.
4. This Court has jurisdiction over this matter pursuant to M.G.L. c. 212 § 4, M.G.L. c. 151B § 9, and M.G.L. c. 175M § 9.
5. Venue is proper because the Plaintiff resides in Hampden County.

**Facts**

***Ms. Rand's Employment and Maternity Leave***

6. Intuitive develops, manufactures, and markets robotic products designed for minimally invasive surgery, including its "da Vinci Surgical System."
7. Intuitive hired Ms. Rand on or about May 2, 2022 for the position of "da Vinci Clinical

Sales Representative," and she started work in the position on July 11, 2022.

8. On or about August 18, 2023, Ms. Rand communicated to Intuitive (through its third-party benefits manager) that she intended to take maternity leave.

9. On or about November 3, 2023, Ms. Rand began her maternity leave pursuant to M.G.L. c. 175M § 1 *et seq.*, the Massachusetts Paid Family and Medical Leave Act ("PFMLA").

10. Ms. Rand took the maximum amount of allowable leave pursuant to the PFMLA.

11. At the time she began her PFMLA leave, Ms. Rand had been performing her job adequately.

12. At the time she began her PFMLA leave, Ms. Rand had not been subjected to any form of discipline.

***Intuitive's Discriminatory Animus and Retaliation Against Ms. Rand***

13. Ms. Rand's manager, David Bottaro, resented Ms. Rand's use of maternity leave and choice to take the maximum amount of leave.

14. On December 18, 2023, while Ms. Rand was on leave, Mr. Bottaro texted one of Ms. Rand's female colleagues to complain specifically about Ms. Rand, commenting as follows: "Start a new job, get pregnant. Sounds like a recurring theme!"

15. In the same text exchange, Mr. Bottaro told Ms. Rand's female colleague that his goal was "to keep you working so hard that when you get home you keep telling [her husband] 'I'm too tired.'"

16. In the same text exchange, Mr. Bottaro followed up with a text reading "file that text under 'blatant HR violations that managers say.'"

17. Upon information and belief, Mr. Bottaro complained to other Intuitive employees about Ms. Rand's leave.

18. Ms. Rand returned from maternity leave on May 3, 2024.

19. Immediately upon Ms. Rand's return, Mr. Bottaro began complaining directly to her about her having children and asking questions about her having more children.

20. On May 6, when Mr. Bottaro was asked during a meeting how his management meeting the previous week had gone he responded, "great other than the full day of diversity and inclusion training," commenting that his team was the definition of diversity since it was "mainly all females of childbearing age."

21. On multiple occasions when Ms. Rand inquired about business changes during her leave, Mr. Bottaro responded with comments to the effect of "this is what happens when you are out for six months" or "what do you expect when you are out for six months."

22. On May 21, when Ms. Rand continued an ongoing conversation about her desire to reduce her commuting time, Mr. Bottaro suggested that "maybe this job is too demanding for a new mom."

23. That same day, Mr. Bottaro asked Ms. Rand when she would be having another baby.

24. Mr. Bottaro singled out Ms. Rand for additional field rides, added to her calendar at the last minute and out of rotation with other team members.

25. Mr. Bottaro knew the additional unexpected field rides would be difficult for Ms. Rand, as a new mother with a total daily commute in excess of two hours.

26. Mr. Bottaro added new events and items to Ms. Rand's calendar unexpectedly and then canceled them at the last minute.

27. Following the field rides, Mr. Bottaro provided excessively negative feedback to Ms. Rand.

28. Less than three weeks after her return from maternity leave, Mr. Bottaro sent Ms. Rand an email with a "Field Coaching Report" attached in which he criticized Ms. Rand's sales efforts and commented that he "would like to see [her] ability to drive new business reflected in [her] daily activities."

29. In the Field Coaching Report Mr. Bottaro reiterated his annoyance with Ms. Rand's maternity, which he had previously expressed, complaining about her "[b]alancing responsibilities at home."

***Ms. Rand's Internal Complaints of Discrimination***

30. On May 30, 2024, Ms. Rand submitted a written complaint of discrimination using Intuitive's anonymous complaint filing system, and received a response indicating that the Company's compliance team would follow up with her by June 13.

31. In her complaint submitted through the Company's internal system, Ms. Rand described the retaliatory and discriminatory treatment to which Mr. Bottaro was subjecting her.

32. Ms. Rand explicitly complained that the comments constituted illegal pregnancy and sex discrimination.

33. As Ms. Rand informed the compliance team, the harassment was causing her substantial stress and anxiety and having the practical effect of interfering with her breast pumping.

34. Contrary to the promised timeframe, the Company's compliance team did not respond to Ms. Rand's complaint timely.

35. On June 18, 2024, after learning that the reporting system had been overhauled, Ms. Rand resubmitted her complaint.

36. Two weeks later, having received no response, Ms. Rand followed up with the Company on the status of its response to her internal complaint.

37. The Company responded by asking if she had any additional information and assuring her that it was conducting an investigation.

38. Ms. Rand confirmed that she had additional information and shared details she had learned from speaking with other women on her team with similar concerns, including instances of Mr. Bottaro commenting about employees "staying on birth control" and bragging about making a team member feel uncomfortable for taking time off for prenatal appointments.

39. Ms. Rand expressed her belief that the issue with Mr. Bottaro seemed "bigger" than just her own experiences.

***Intuitive's Further Retaliation***

40. On July 12, 2024, just two months after she returned from her leave and after she had complained in writing multiple times to the Company about his discriminatory and retaliatory behavior, Mr. Bottaro informed Ms. Rand that he was placing her on a Performance Improvement Plan (PIP).

41. The plan set goals that were entirely unrealistic and included at least one doctor who was not even in Ms. Rand's sales territory.

42. The PIP's language was extremely vague and referred to subjective benchmarks for improvement such as "plan & act strategically to execute purposeful daily sales activities that drive new business."

43. It was plain that Mr. Bottaro's motives were retaliatory and that he was intending to use the PIP as a means of pushing Ms. Rand out of her position.

44. Ms. Rand updated her prior internal complaint to report that she felt the PIP constituted further retaliation.

45. In her update to her internal complaint, Ms. Rand expressed that she had initially feared retaliation when she had filed her complaint, and wondered whether the complaint was being handled appropriately.

46. The Company responded to this update by asking Ms. Rand to speak directly with a member of its compliance team.

47. On August 14, 2024 Ms. Rand spoke with James Merriweather, a "Sr. Employment Investigator & Advisory Specialist" with the Company.

48. Ms. Rand's discussion with Mr. Merriweather covered her initial internal complaint and the PIP in great detail.

49. Mr. Merriweather commented that Mr. Bottaro's behavior was "very concerning" and said he would escalate the complaint.

50. Mr. Merriweather promised Ms. Rand a resolution by the following Tuesday.

51. Mr. Merriweather apologized on behalf of the Company that the investigation had been taking so long and expressed concern about the PIP being used for termination purposes rather than improvement.

52. Mr. Merriweather said he would ask for the PIP to be put on hold pending the outcome of the investigation.

53. Ms. Rand described to Mr. Merriweather how anxious Mr. Bottaro's conduct made her feel, how much stress she was feeling as a result, and how much she dreaded going to work with him.

54. Despite Mr. Merriweather's promises to keep Ms. Rand's identity confidential, and despite the ostensible anonymity of the internal complaint system, it was obvious that Mr.

Bottaro could identify Ms. Rand as the employee who had submitted the internal complaint.

55. Ms. Rand was the only employee who had returned from leave in May, and Mr. Bottaro was interviewed for the investigation along with everyone else on the six-person team.

56. Ms. Rand has good reason to believe that Mr. Bottaro was aware of her complaint prior to and after imposing the PIP, and the retaliatory conduct continued.

***Intuitive's Retaliatory Termination of Ms. Rand's Employment***

57. Rather than engage meaningfully with Ms. Rand about the goals described in the PIP, Mr. Bottaro continued to implement his plan to terminate her employment.

58. On August 16, 2024, the 30-day follow up from the PIP, Mr. Bottaro and his director Allyson Teel informed Ms. Rand that she would be terminated via phone call on September 13, 2024.

59. Mr. Bottaro and Ms. Teel did not give Ms. Rand the opportunity to speak about the improvement objectives and made clear that her actual performance was not the issue.

60. Ms. Rand contacted Mr. Merriweather to report that she believed the PIP follow up and announced termination constituted further retaliation.

61. Mr. Merriweather expressed shock in response to Ms. Rand's report, especially given that the PIP suggested another review would occur on September 13.

62. Mr. Merriweather explained that contrary to what he had said, the team interviews had not been completed and that the investigation was ongoing.

63. Ms. Rand again reiterated to Mr. Merriweather how much stress she was experiencing as a result of Mr. Bottaro's retaliatory conduct.

64. The PIP plan was put on hold, and on August 27, 2024 Mr. Merriweather informed Ms. Rand that he had spoken with a team member who had corroborated her complaint about Mr. Bottaro.

65. According to more than one other person, Mr. Bottaro had made inappropriate comments to other women including one who was breastfeeding.

66. Mr. Merriweather raised potential alternatives to Ms. Rand remaining on Mr. Bottaro's team including transfer to a different team, relocation, and administrative leave.

67. On August 30, 2024 Mr. Merriweather informed Ms. Rand that he had completed his investigation and would be making a decision in the coming days.

68. Ms. Rand took a vacation between August 30 and September 9, during which time Mr. Bottaro canceled all of her calendar invites and otherwise made clear that he was intent on proceeding with his plan to terminate her employment.

69. Ms. Rand reported this too to Mr. Merriweather.

70. On September 13, 2024 Mr. Merriweather informed Ms. Rand that he had completed his investigation and that disciplinary action would be taken against Mr. Bottaro, the form of which would be decided by the Company's Human Resources department.

71. Mr. Merriweather suggested that Ms. Rand's PIP would be resumed after Human Resources was done with its decision.

72. On September 19, 2024 Mr. Merriweather held an "Investigation Close Out Meeting" with Ms. Rand.

73. Mr. Merriweather indicated that the evidence from the team interviews was mixed, but that he found Mr. Bottaro's text messages from December 18 to be "inappropriate and disturbing."

74. Mr. Merriweather claimed that "everyone would be on their very best behavior" after the closure of the investigation and that Mr. Bottaro understood he needed to "do better."

75. Mr. Merriweather also noted that everyone on the team had performed similarly poorly over the past two quarters and that no one had met their target numbers, which was consistent with Ms. Rand's impression that she had been singled out

76. Following Ms. Rand's conversation with Mr. Merriweather on September 19, 2024, Ms. Teel abruptly added a meeting to Ms. Rand's calendar with Henry Pastor, from the Company's Human Resources department.

77. Mr. Pastor and Ms. Teel informed Ms. Rand that her PIP was reinstated and that they had both been too busy to terminate her on September 13 but were now telling her that she was being terminated.

78. Mr. Pastor and Ms. Teel told Ms. Rand that she would have the option of resigning, but that her termination would be effective September 23, 2024 in any event.

79. Ms. Rand did not resign, and she was not paid all outstanding earned wages by September 23, 2024.

80. Pursuant to M.G.L. c. 151B § 5, Ms. Rand timely filed a complaint with the Massachusetts Commission Against Discrimination (MCAD).

81. Pursuant to M.G.L. c. 151B § 9, Ms. Rand obtained authorization from the MCAD to withdraw her complaint in order to pursue this action.

82. Ms. Rand has complied with all applicable prerequisites to bringing this action.

**COUNT I**
**Sex Discrimination in Violation of M.G.L. c. 151B § 4(1)**

83. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

84. As described in the foregoing paragraphs, Intuitive subjected Ms. Rand to discriminatory treatment on the basis of sex, specifically including but not limited to the following:

    a. Its imposition of a hostile work environment based on her supervisor's repeated derogatory comments concerning or based on her sex;

    b. Its provision of unnecessarily and disproportionately negative feedback, motivated by animus based on her sex;

    c. Its imposition of discipline, including the imposition of the PIP;

    d. Its failure to meaningfully investigate Ms. Rand's multiple complaints of discrimination and retaliation; and

    e. Its termination of her employment.

85. By subjecting Ms. Rand to a hostile work environment based on sex, and in other respects as described above, including but not limited to unwarranted discipline and wrongful termination, Intuitive violated M.G.L. c. 151B § 4(1).

86. Especially under the circumstances described above, Intuitive's discriminatory treatment of Ms. Rand caused her substantial emotional distress.

87. Ms. Rand has incurred lost income as a result of her termination.

88. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

89. Pursuant to M.G.L. c. 151B § 9, Intuitive is liable to Ms. Rand for her damages proven at trial, as well as punitive damages and her attorneys' fees and costs incurred.

**COUNT II**
**Pregnancy Discrimination in Violation of M.G.L. c. 151B § 4(1)**

90. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

91. As described in the foregoing paragraphs, Intuitive subjected Ms. Rand to discriminatory treatment on the basis of pregnancy status, specifically including but not limited to the following:

    a. Its imposition of a hostile work environment based on her supervisor's repeated derogatory comments concerning or based on her pregnancy status;

    b. Its provision of unnecessarily and disproportionately negative feedback, motivated by animus based on her pregnancy status;

    c. Its imposition of discipline, including the imposition of the PIP;

    d. Its failure to meaningfully investigate Ms. Rand's multiple complaints of discrimination and retaliation; and

    e. Its termination of her employment.

92. By subjecting Ms. Rand to a hostile work environment based on pregnancy status, and in other respects as described above, Intuitive violated M.G.L. c. 151B § 4(1).

93. By subjecting Ms. Rand to other discriminatory treatment, including but not limited to unwarranted discipline and wrongful termination, and in other respects as described above, Intuitive violated M.G.L. c. 151B § 4(1).

94. Especially under the circumstances described above, Intuitive's discriminatory treatment of Ms. Rand caused her substantial emotional distress.

95. Ms. Rand has incurred lost income as a result of her termination.

96. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

97. Pursuant to M.G.L. c. 151B § 9, Intuitive is liable to Ms. Rand for her damages proven at trial, as well as punitive damages and her attorneys' fees and costs incurred.

## COUNT III
## Retaliation in Violation of M.G.L. c. 151B § 4(4)

98. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

99. By subjecting Ms. Rand to disparate treatment in response to her informal complaints of discrimination as well as her formal internal complaints of discrimination, and in other respects as described above, Intuitive engaged in retaliation and/or interference with protected rights in violation of M.G.L. c. 151B § 4(4).

100. Especially under the circumstances described above, Intuitive's discriminatory treatment of Ms. Rand caused her substantial emotional distress.

101. Ms. Rand has incurred lost income as a result of her termination, and continues to incur lost income.

102. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

103. Intuitive should be held liable for the full amount of Ms. Rand's damages as well as her attorneys' fees and costs incurred, and Ms. Rand should be awarded such other and further relief as the Court deems appropriate.

## COUNT IV
## Retaliation in Violation of M.G.L. c. 151B § 4(4A)

104. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

105. By subjecting Ms. Rand to disparate treatment in response to her informal complaints of discrimination as well as her formal internal complaints of discrimination, and in other respects as described above, Intuitive interfered with Ms. Rand's protected rights in violation of M.G.L. c. 151B § 4(4A).

106. Especially under the circumstances described above, Intuitive's retaliatory treatment of Ms. Rand caused her substantial emotional distress.

107. Ms. Rand has incurred lost income as a result of her termination, and continues to incur lost income.

108. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

109. Intuitive should be held liable for the full amount of Ms. Rand's damages as well as her attorneys' fees and costs incurred, and Ms. Rand should be awarded such other and further relief as the Court deems appropriate.

## COUNT V
## Retaliation in Violation of M.G.L. c. 151B § 4(11A)

110. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

111. By subjecting Ms. Rand to disparate treatment in response to her taking of parental leave, and in other respects as described above, Intuitive interfered with Ms. Rand's protected rights in violation of M.G.L. c. 151B § 4(11A).

112. Especially under the circumstances described above, Intuitive's retaliatory treatment of Ms. Rand caused her substantial emotional distress.

113. Ms. Rand has incurred lost income as a result of her termination, and continues to incur lost income.

114. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

115. Intuitive should be held liable for the full amount of Ms. Rand's damages as well as her attorneys' fees and costs incurred, and Ms. Rand should be awarded such other and further relief as the Court deems appropriate.

**COUNT VI**
**Retaliation in Violation of M.G.L. c. 175M § 9**

116. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

117. By terminating Ms. Rand and otherwise taking adverse employment actions against her within six months of her exercise of leave rights pursuant to the PFMLA, Intuitive interfered with Ms. Rand's protected rights in violation of M.G.L. c. 175M § 9.

118. Especially under the circumstances described above, Intuitive's retaliatory treatment of Ms. Rand caused her substantial emotional distress.

119. Ms. Rand has incurred lost income as a result of her termination, and continues to incur lost income.

120. Ms. Rand has incurred attorneys' fees and costs in bringing this action and asserting her claims made herein.

121. Pursuant to M.G.L. c. 175M § 9(d), Intuitive should be held liable for the full amount of Ms. Rand's damages, trebled, as well as her attorneys' fees and costs incurred, and Ms. Rand should be awarded such other and further relief as the Court deems appropriate.

**COUNT VII**
**Late Payment of Wages in Violation of M.G.L. c. 149 § 148**

122. Ms. Rand restates the foregoing paragraphs as if fully set forth here.

123. By failing to pay Ms. Rand in full all earned wages immediately upon termination, Intuitive violated M.G.L. c. 149 § 148.

124. Pursuant to M.G.L. c. 149 § 150, Intuitive should be held liable for the full amount of Ms. Rand's damages due to the late payment of wages, trebled, as well as her attorneys' fees and costs incurred, and Ms. Rand should be awarded such other and further relief as the Court deems appropriate.

WHEREFORE, the Plaintiff respectfully requests that the Court award her the following relief:

A. Compensatory damages, including damages for lost income as well as emotional distress;

B. Multiple damages;

C. Punitive damages;

D. Attorneys' fees and costs incurred;

E. Interest; and

F. Such other and further relief as the Court may deem appropriate.

**THE PLAINTIFF CLAIMS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE**

Respectfully submitted,

Plaintiff Amber Rand
By her attorney,

*_/s/ Benjamin C. Rudolf_*
Benjamin C. Rudolf, BBO# 667695
Rudolf, Smith, Griffis & Ruggieri, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
Phone: (508) 425-6330
Fax: (508) 536-0834
rudolf@rudolfsmith.com

Dated: March 16, 2026